# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 7 |
| THOMAS WALTERS | |
| KELLY WALTERS | |
| | Case No. 14-30067 |
| Debtor(s). | |
| ERIC MEYER | |
| Plaintiff(s), | |
| | Adversary No. 14-3035 |
| v. | |
| THOMAS WALTERS | |
| KELLY WALTERS | |
| Defendant(s). | |

## OPINION

This matter having come before the Court for trial on plaintiff's Complaint for Determination of Dischargeability of Debt; the Court having heard sworn testimony, and being otherwise advised in the premises makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTS

On December 2, 2011, debtors Thomas and Kelly Walters (Defendants) entered into an Agreement for Sale of Real Estate ("Agreement") with plaintiff Eric Meyer (Plaintiff). The Agreement obligated the defendants to purchase real estate located at 351 South Main Street, Carrollton, Illinois from the plaintiff for $89,000.00. The purchase price was to be paid in monthly installments of $634.51 beginning December 1, 2011, with a final balloon payment for the remaining balance due on November 1, 2012. The defendants, as required by the Agreement,

maintained insurance coverage on the subject real estate and named the plaintiff as an additional insured on the policy.

In the spring of 2012, the property was damaged in a hail storm. The defendants made a claim against their homeowners' insurance policy for the hail damage and received a check in the amount of $16,602.77 from their insurer.  The insurance company further agreed to pay an additional $2,913.45 on the defendants' claim, provided that the repairs were made within one year of the date that the damage occurred.

Upon receiving the insurance check, defendant Kelly Walters contacted the plaintiff and asked whether the defendants could make the necessary repairs to the property themselves. Based on the defendants' representations that (1) the insurance proceeds would be used to purchase building materials to repair the hail damage and (2) that defendant Thomas Walters, a skilled carpenter, would make the necessary repairs, the plaintiff permitted the defendants to endorse the check on his behalf and to deposit the insurance proceeds into their bank account.

On April 10, 2012, the defendants deposited the $16,602.77 insurance check into their account at Laclede Community Credit Union as evidenced by plaintiff's Exhibit #4.   The defendants testified at trial that other funds were also deposited into their Laclede account during the month of April 2012, including a $7,553.36 deposit on April 20, 2012.[1]  However, despite these deposits, the Laclede account statement reveals that by May 21, 2012, all but $15.83 of the funds in the account had been dissipated.  The account statement shows that the defendants used the account funds for general living expenses as well as for various luxury purchases.[2]  The

---

[1] Although not entirely clear from the defendants' testimony, it appears that the $7,553.36 deposit represented the proceeds from the sale of the defendants' former residence.
[2] The Laclede account statement shows expenditures at various clothing stores, shopping malls, and restaurants during the six week period.

2

defendants admitted that none of the funds were spent to repair the hail damage to the subject real estate.

On December 4, 2012, in recognition of the fact that the defendants were unable to finance the balloon payment contemplated under the original Agreement and because they had spent the hail damage insurance proceeds without making the necessary repairs, the parties entered into an Extension Agreement (*See* Plaintiff's Exhibit #2).  Pursuant to the Extension Agreement, the defendants agreed to make monthly payments of $634.51 starting December 1, 2012, with the entire remaining balance due on November 1, 2013.  The defendants expressly acknowledged in the Extension Agreement that none of the insurance proceeds from the 2012 hail damage claim had been used to reduce the purchase price under the original agreement or to repair the property.  Accordingly, the defendants agreed that the plaintiff would have the right to seek recovery of the insurance proceeds from the defendants in the event that the defendants failed to comply with the original purchase Agreement as modified by the Extension Agreement.

Unable to comply with the terms of the Extension Agreement, the defendants vacated the residence at 351 South Main Street, Carrollton, Illinois in October, 2013.  On January 14, 2014, the defendants filed for relief under chapter 7 of the Bankruptcy Code.  The defendants scheduled the plaintiff as an unsecured creditor on Schedule F of their bankruptcy petition.  The plaintiff then filed the instant adversary proceeding on May 1, 2014 challenging the dischargeability of the defendants' debt to him pursuant to 11 U.S.C. § 523(a)(2)(A).

## **DISCUSSION**

The issue before the Court is governed by 11 U.S.C. § 523(a)(2)(A), which states:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

>> (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>>
>>> (A)  false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

In order to establish an exception to discharge under 11 U.S.C. § 523(a)(2)(A), a creditor must show (1) that the debtor made a false representation or omission which they either knew was false or made with a reckless disregard for the truth; (2) that the debtor possessed an intent to deceive or defraud; and (3) that the creditor justifiably relied on the false representation. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Ojeda v. Goldberg*, 599 F.3d 713,716-17 (7th Cir. 2010). The plaintiff has the burden of proving each element of the exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). In order to effectuate the "fresh start" of the Bankruptcy Code, exceptions to discharge are construed against the creditor and liberally in favor of the debtor. *In re Morris,* 223 F.3d 548 (7th Cir. 2000). However, the Code only affords relief to the honest but unfortunate debtor. *Cohen v. de la Cruz (In re de la Cruz)*, 523 U.S. 213, 217, 118 S.Ct. 1212, 1216, 140 L.Ed. 341 (1998).

An intentional falsehood, for purposes of § 523(a)(2)(A) must concern a material fact. *In re Jairath*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). However, "a false representation need not be an overt oral or written lie; it may be established by showing conduct intended deliberately to create and foster a false impression." *Id. See also Haeske v. Arlington (In re Arlington)*, 192 B.R. 494, 498 (Bankr. N.D. Ill. 1996).

Here, the evidence adduced at trial clearly established that the defendants made a false representation to the plaintiff. Although they agreed that they would use the insurance proceeds

to repair the hail damage on the subject real estate, the defendants, in fact, did not use *any* of the proceeds for this purpose—a fact that they openly admitted in the Extension Agreement that was executed on December 4, 2012.  Further, the defendants knew that their representation was false, or, at the very least, was made with a reckless disregard for the truth given the fact that they squandered the insurance proceeds shortly after they received them. The uncontroverted evidence revealed that the defendants spent the entire balance of the insurance proceeds--as well as an additional $7,500.00-- in less than six weeks time on cash withdrawals and various purchases. There is no dispute that the defendants made no effort to repair the hail damage despite their representations to the plaintiff.

In addition to showing that the debtor made a false representation, any action under § 523(a)(2)(A) requires proof that the debtor acted with the intent to deceive. *In re Howard*, 339 B.R. 913 (Bankr. N.D. Ill. 2006).  The issue of intent is a question of fact to be determined by the Bankruptcy Court. *Gabellini v. Rega*, 724 F.2d 579 (7th Cir. 1984), and is measured by the defendants' subjective intention at the time the representation is made. *In re Monroe*, 304 B.R. 349 (Bankr. N.D. Ill. 2004).  Because direct evidence of a fraudulent intent is rarely before the Court, intent to deceive may be established through circumstantial evidence and may be inferred from the totality of the evidence. *In re Kucera*, 373 B.R. 878 (Bankr. C.D. Ill. 2007).  Where defendants knowingly or recklessly make false representations which they know or should know will induce another to act, an intent to deceive may be inferred. *Matter of Sheridan*, 57 F.3d 627 (7th Cir. 1995); *In re Jairaith*, 259 B.R. at 315.

At trial, the defendants denied that they intended to deceive the plaintiff when they represented that the insurance proceeds would be used to repair the property.  Debtor Thomas Walters testified that prior to May 2012, he and his wife had no intention of using the insurance

proceeds for what he referred to as "financial purposes." However, in May 2012, he injured his hand and was unable to work. Due to their subsequent reduction in income, it then became necessary for the defendants to use the insurance proceeds for their own use. Unfortunately for the defendants, however, their actions belie this testimony. The evidence presented at trial indicates that when the defendants deposited the insurance check on April 10, 2012, their Laclede account had a negative balance. *See* Plaintiff's Exhibit #4. Almost immediately upon depositing the insurance proceeds, the defendants began making cash withdrawals from the account as well as expenditures at clothing stores, shopping malls and restaurants. By May 21, 2012, all of the money in the account was nearly gone. Given the manner in which the defendants dissipated the proceeds in such a short period of time--without spending a single penny to repair the hail damage-- the Court can make no other conclusion but that the defendants intended to deceive the plaintiff.

The final requirement for proving a cause of action under 11 U.S.C. § 523(a)(2)(A) is to establish that the plaintiff "justifiably relied" on the defendants' intentional misstatement. As the Seventh Circuit explained in *Ojeda v. Goldberg*:

> Justifiable reliance is a less demanding standard than reasonable reliance; it requires only that the creditor did not 'blindly [rely] upon a misrepresentation, the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation' Under the justifiable reliance standard, a creditor has no duty to investigate unless the falsity of the representation would have been readily apparent. But, the justifiable reliance standard is not an objective one. Rather, it is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff.

599 F.3d 712, 717 (7th Cir. 2010), *citing Field v. Mans*, 516 U.S.59, 71-72, 116 S.Ct.437, 133 L.2d 351 (1995) (internal citations omitted).

Looking at this case, the Court concludes that this particular plaintiff was justified in relying on the defendants' assertion that they would use the insurance proceeds to repair the hail

damage to the property.  The evidence at trial showed that at the time that the defendants made the representation, the plaintiff had no reason not to trust them.  There was no indication or "red flags" from the parties' prior dealings that the defendants would not act as agreed.   Further, the defendants' assertion that Mr. Walters would perform the necessary repairs was particularly believable given his employment as a carpenter.  The plaintiff credibly testified that he would never have agreed to allow the defendants to deposit the insurance proceeds into their account had he known that the funds would not be spent on repair of the hail damage.  Unfortunately for the plaintiff, the defendants were not true to their word.

Having concluded that the plaintiff established each of the necessary elements of 11 U.S.C. § 523(a)(2)(A), the Court must now determine the amount excepted from discharge.  Based on the evidence at trial, the Court finds that plaintiff has established damages in the amount of $19,516.22.  The plaintiff proved by a preponderance of the evidence that the defendants took possession of the $16,602.77 in insurance proceeds and did not use the funds for for their represented purpose.  Additionally, the plaintiff established that he was deprived of the sum of $2,913.45, which is the additional amount that the insurance would have paid in the event that the hail damage was repaired within one year of the occurrence.  Accordingly, for the reasons set forth above, the Court finds that a non-dischargeable judgment should be entered in favor of the plaintiff and against the defendants in the amount of $19,516.22.

A separate Judgment Order shall enter.


ENTERED: October 23, 2014

                                        /s/ Laura K. Grandy
                                    UNITED STATES BANKRUPTCY JUDGE